## In re HIRSCHMAN.

(District Court, D. Utah. October 1, 1900.)

### No. 221.

1. BANKRUPTCY—UNLIQUIDATED CLAIMS—WHAT ARE PROVABLE.

Bankr. Act 1898, § 63, subsec. "b," which provides for the liquidation by the court of unliquidated claims against the bankrupt, and that they may thereafter be proved against his estate, covers only such claims as, when liquidated, are provable debts under the specifications of the preceding subsection "a," and does not authorize the liquidation and proof of claims arising ex delicto, unless they are of such a nature that the claimant might, at his election, waive the tort, and recover in quasi contract.

2. SAME—RESCISSION OF SALE FOR FRAUD—EFFECT.

Creditors of a bankrupt, who have been permitted to rescind contracts by which they sold goods to the bankrupt, on the ground of fraud, and to recover from the trustee such of the goods as came into his hands, are not thereby precluded from having their claims for the proceeds of the goods which had been previously sold by the bankrupt liquidated by the court, and proving the same as debts against the estate; they being entitled to treat such proceeds of their property as money received to their use.

In Bankruptcy. On petitions for liquidation of claims against the bankrupt.

Booth, Lee & Ritchie, for petitioners Guthmann, Carpenter & Telling, Green-Wheeler Shoe Co., Geisecke Boot & Shoe Mfg. Co., Z. T. Lindsay, George Romney, Jr., Bay State Shoe & Leather Co., Packard & Field, Krohn, Fechheimer & Co., and Joseph P. Dunn Leather Co.

Krebs & Hoppaugh and Pierce, Critchlow & Barette, for George F. Sprague, trustee of estate.

Pierce, Critchlow & Barette, for W. S. McCornick, general creditor.

MARSHALL, District Judge. Several parties have applied to the court to direct the manner of liquidation of their claims against the bankrupt, under section 63, subsec. "b," of the bankrupt act of 1898. These claims all arise under similar circumstances. The bankrupt was a retail dealer in boots and shoes. After the adjudication, a trustee was regularly appointed, who took possession of the bankrupt's stock. Thereupon the present petitioners severally filed petitions in the bankruptcy proceeding, in which they alleged that the

bankrupt had purchased from them certain goods by fraudulent representations; that they elected to rescind such sales; that a described portion of the goods sold was in the possession of the trustee in bankruptcy, and the remainder had been disposed of by the bankrupt prior to the adjudication. The petitioners prayed that they might recover from the trustee the goods in his possession, which had been procured from them by fraud, and that their claims against the bankrupt for the residue might be liquidated under the direction of the court. The trustee answered these several petitions. To the answers replications were filed. Trial was had before the court, and a decree for the petitioners for the possession of the goods so held by the trustee.

For the petitioners it is contended that section 63, subsec. "b," of the bankrupt act of 1898 authorizes the liquidation and subsequent proof of claims ex delicto. Except as to causes of action which, at the option of the claimant, permit a recovery in quasi contract or in tort, I am unable to accede to this proposition. Section 63 of the act specifies all provable debts. The word "debt," as used in this section, includes any "debt, demand, or claim provable in bankruptcy." Section 1, subd. 11. Unless a claim is authorized to be proved by section 63, it is excluded. The section is divided into two subsections,—"a" and "b." Subsection "a" commences, "Debts of the bankrupt may be proved and allowed against his estate which are," etc. Then follow five classes of claims: (1) Those founded on a judgment or written instrument existing at the time of the filing of the petition in bankruptcy; (2) and (3) those for taxable costs in certain cases; (4) those founded upon an open account, or upon an express or implied contract; (5) those founded upon provable debts reduced to judgment after the filing of the petition and before the consideration of the bankrupt's application for a discharge. Subsection "b" is as follows: "Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate." The intent of congress was to specify in subsection "a" all provable debts, and in subsection "b" to provide for the liquidation of such as, falling under subsection "a," were yet unliquidated. This was to prevent the construction of this act in the way the older bankrupt acts in England were construed. Under those acts unliquidated damages, although arising ex contractu, were held not to be provable debts, because the statutes seemed to require the creditor to swear to a precise sum. Lee & Chapman's Case, 30 Ch. Div. 216. The care used to particularize various provable debts in subsection "a" negatives the extended construction of subsection "b" urged by petitioners. If the latter subsection authorizes the liquidation and subsequent proof of damages ex delicto, the whole subject could have been covered in very general language. Assuming petitioners' construction of section 63, subsec. "b," it would embrace claims arising from any tort. There is no language in the section which can be held to include some, and not all, torts. Yet the general policy of bankrupt acts has been not to include in provable debts claims for damages for personal wrongs. It is hard-

ly possible, if congress had intended such a departure from the history of bankrupt legislation, that it should not have expressed the intent unmistakably. Section 17 of the act prescribes the provable debts which are not released by a discharge in bankruptcy. Among such debts judgments in actions for certain torts are mentioned; but no cause of action for a tort not reduced to judgment is excepted. If the latter, when liquidated otherwise than by judgment, constitutes a provable debt under section 63, subsec. "b," it would be released by a discharge in bankruptcy, although a judgment on the cause of action would not be affected. This distinction would seem to rest on no principle, and there is a presumption against any construction of the act which would render it necessary. It follows that the petitioners must bring themselves under section 63, subsec. "a," in order to prove their claims.

Section 63, subsec. "a," does not authorize the proof of any claim arising ex delicto, unless a recovery may be had quasi ex contractu. Under subsection 4, claims founded upon a contract, express or implied, may be proved. The implied contract intended includes the fictitious contract implied in law,—only treated as a contract for the sake of the remedy,—and the true contract implied in fact. As the petitioners rescinded the several contracts of sale, the goods must be considered as tortiously acquired by the bankrupt, except as against a purchaser without notice. If the goods were sold by the bankrupt, the petitioners can treat the sales as made for them, and maintain a claim for the consideration obtained by the bankrupt as money had and received to their several use. This is said to be waiving the tort and suing in contract. In truth it is but an election of remedy, as the tort is not waived, but insisted on as the basis for the rescission of the contract. If petitioners have once made an election, and prosecuted the elected remedy to judgment, it is final; for "nemo debet bis vexari pro eadem causa." Moreover, the person defrauded cannot recover his goods, or the proceeds of the sale of them, and at the same time recover their value in trover. It is claimed for the trustee that this principle applies here, for the petitioners have recovered a part of their goods in a proceeding equivalent to an action of detinue at law, and now seek to prove for the remainder. In the proceeding to recover the goods no recovery could be had for such of the goods as had been sold by the bankrupt, and therefore never came into the possession of the trustee. The two proceedings against the trustee for the recovery of the goods held by him and against the bankrupt estate for money had and received by the bankrupt to the use of the petitioner both rest on the rescission of the contracts of sale. Neither violates the rule laid down by Parke, B., in Ferguson v. Carrington, 9 Barn. & C. 59, that "the plaintiffs cannot avail themselves of the defendant's fraud so as to rescind the contract, and substitute a new contract of sale on different terms." The rescinding of the contract of sale revests the petitioners with the title to the goods; and the person who has wrongfully sold them may, for the purposes of the action, be considered as their agent, and the sale made for them. Allen v. Ford, 19 Pick. 217; 3 Rob. Prac. 403. In Browning v. Bancroft, 8 Metc.

278, the defendant purchased goods from the plaintiff by means of fraud. A part of these goods he sold. The plaintiff rescinded the contract of sale, and brought an action to recover the money received by the defendant for the goods sold by him as had and received to the plaintiff's use. Thereafter the plaintiff brought replevin for the goods unsold, and it was held that he was not precluded from recovery by the former action for money had and received. Bigelow, Fraud, 435; Keener, Quasi Cont. 207. The petitioners will be given leave to file claims before the referee for the several sums received by the bankrupt on sales of their respective goods. The referee shall, on a hearing after notice to the trustee, determine the respective amounts so received by the bankrupt, and for the sums so determined the petitioners may prove.